[Civ. No. 39.   Fifth Dist.   Mar. 14, 1963.]

G. M. RUSSELL et al., Plaintiffs and Appellants, v. UNITED PACIFIC INSURANCE COMPANY et al., Defendants and Appellants; JACK M. JAMES et al., Defendants and Respondents.

ERNEST W. BUTLER, As Executor, etc., Plaintiff and Appellant, v. UNITED PACIFIC INSURANCE COMPANY et al., Defendants and Appellants; JACK M. JAMES et al., Defendants and Respondents.

(Consolidated cases.)

Rowell, Lamberson & Thomas, Breckinridge Thomas, Irvine P. Aten, Hayhurst & Quinlisk and L. Nelson Hayhurst for Plaintiffs and Appellants.

McCormick, Barstow, Sheppard & Coyle, McCormick, Barstow, Sheppard, Coyle & Best, Robert E. Coyle and Aubrey H. Seed for Defendants and Appellants.

Lerrigo, Thuesen & Thompson, Lerrigo, Thuesen, Thompson & Thompson, and James M. Thuesen for Defendants and Respondents.

BROWN (R.M.), J.—These two actions find their source in a prior action (*Butler* v. *Holman,* 146 Cal.App.2d 22 [303 P.2d 573], cert. den. 353 U.S. 930 [77 S.Ct. 718, 1 L.Ed 2d 723]).

The estate of Aaron B. Butler, deceased, owned a parcel of unimproved realty near Coalinga, California. Jack M. James, Andrew J. Thickstun, and their respective wives, located the "Mistake Lode Mining Claim" on a lode deposit of chrome ore on the Butler property, under the erroneous belief that the land was a part of the public domain. In October 1952 the locators leased to J. R. Holman, who entered into possession, developed the mine and commenced mining operations.

On June 24, 1955, the executors of the Butler estate, hereinafter referred to as "Butler," sued Holman, Thickstun, and James, hereinafter referred to as the "Holman group," for recovery of the land, an accounting, damages and injunctive relief.

A few days later, on July 1, 1955, Butler leased the mine to G. M. Russell, R. W. Russell, and E. F. Chambers, hereinafter designated as "Russell-Chambers."

On July 5, 1955, the Holman group cross-complained against Butler to quiet title to the land and for injunctive relief, bringing in Russell-Chambers as cross-defendants, and obtained an ex parte temporary order restraining all cross-defendants from entering upon or interfering with the mine, upon filing a $5,000 bond issued by The Travelers Indemnity Company and executed by that company and J.R.Holman.

On July 22, 1955, after a vigorously contested hearing, the preliminary injunction sought by Butler was denied, and the Holman group obtained a preliminary injunction

based on their cross-complaint, enjoining Butler and Russell-Chambers from working or mining the mine and from interfering with the working or mining of the mine by the Holman group, upon filing a $100,000 bond issued by United Pacific Insurance Company, and executed by that company alone. As a condition of the issuance of the preliminary injunction, the Holman group were required to submit to counsel for plaintiffs weekly reports of amounts of ore removed from the mine during each such weekly period. Both sides were given the right to enter upon the property for inspection purposes.

Upon a nonjury trial, there was a judgment for Butler against the Holman group for damages to October 3, 1955; the right was reserved to Butler to file an additional suit for damages and an accounting for an unknown quantity of ore removed and stockpiled subsequent to October 3, 1955, and ore removed before that date but for which payment had not been received by Holman. Judgment was rendered November 22, 1955, and entered December 13, 1955.

Upon being advised of rendition of the judgment the Holman group, on November 22, 1955, surrendered possession of the property and mine to Butler but refused to deliver up the stockpiled ore. The Holman group subsequently milled and sold the stockpiled ore and retained the proceeds thereof.

The two actions here involved followed. The subject of each is ore sold by the Holman group after October 3, 1955, which, for convenience, we shall refer to as the stockpiled ore. Russell-Chambers sued in three counts, the first against Holman, the Thickstun couple and the James couple, seeking damages for ore converted, an accounting, attorneys' fees, surveyors' fees, interest and other incidental expenses not pertinent here; the second against United Pacific, seeking to recover $100,000 on the bond; and the third against Travelers and J. R. Holman, seeking to recover $5,000 on the bond.

Butler sued the same individual and corporate defendants. The first cause seeks from all of the individual defendants damages for ore converted, an accounting, attorneys' fees, and interest; the second cause is against United Pacific, seeking to recover the face amount of its bond; and the third cause is against Travelers and J. R. Holman, seeking to recover the face amount of their bond.

These two actions, consolidated for trial, were tried by the court sitting without a jury. Following trial, the court found that the temporary restraining order and preliminary

injunction were valid in form, and the only method by which they could be terminated was trial on the merits; that defendants Holman, Thickstun, and James were not entitled to the preliminary injunction; that Butler was entitled to $12,500 attorneys' fees, allocable $1,500 to the restraining order and $11,000 to the preliminary injunction, and damages of $8,536.22, being 7 per cent royalty reserved under the Butler to Russell-Chambers lease; that Russell-Chambers were entitled to attorneys' fees of $2,500, allocable $900 to the restraining order and $1,600 to the preliminary injunction; $2,165 surveyor's fees, allocable $663.50 to the restraining order and $1,501.50 to the preliminary injunction, and $45,255.89 principal.

Butler had judgment against all of the individual defendants for $8,536.22 principal and $12,500 attorneys' fees; against Travelers for $1,500 (attorneys' fees) and against United Pacific for $19,536.22 ($8,536.22 principal and $11,000 attorneys' fees), the judgments on the bonds, upon payment thereof, to be set off against the individual judgments.

Russell-Chambers had judgment against all of the individual defendants for $45,255.89, attorneys' fees of $2,500 and surveyor's fees of $2,165; against Travelers for $1,563.50 ($663.50 surveyor's fees and $900 attorneys' fees); and against United Pacific for $48,357.39 ($45,255.89 principal, $1,600 attorneys' fees and $1,501.50 surveyor's fees), with a similar set-off provision.

No interest prior to the date of the judgment was allowed.

All parties, with the exception of Jack M. James and Lavonna James, filed notices of appeal. Travelers, Holman, Thickstun and Thickstun failed to perfect their appeals and those appeals must be dismissed. (Cal. Rules of Court, rule 17(a).)* Butler and Russell-Chambers presented joint briefs. The net result for our consideration is an appeal by defendant United Pacific with Butler-Russell-Chambers resisting and an appeal by Butler-Russell-Chambers with United Pacific resisting.

### Appeal of United Pacific

By the terms of the bond which supported the preliminary injunction, United Pacific undertook to pay to the plaintiffs in this action, who were cross-defendants in the injunction suit, such damages, not exceeding the sum of $100,000, ''. . . as said parties may sustain by reason of the

---

*Formerly Rules on Appeal, rule 17(a).

said injunction if the court finally decides that the cross-complainants be not entitled thereto.'' The statutory language of section 529 of the Code of Civil Procedure, providing for an undertaking upon the granting of an injunction, is substantially similar.

United Pacific's first group of contentions and arguments requires a determination of whether, in the light of the particular facts here present, judgment on the merits in the injunction suit constitutes a ''final decision'' within the meaning of the terms of the bond.

Many of the cases to which we have been referred require but brief comment. They are not determinative of our problem. For example, *Asevado* v. *Orr,* 100 Cal. 293 [34 P. 777], involved a voluntary dismissal by the plaintiff which the court deemed to be a confession that he was not entitled to the injunction and permitted recovery. In *Fowler* v. *Frisbie,* 37 Cal. 34, an order dissolving an injunction was held to be a prima facie adjudication that there was no foundation for the injunction, and recovery was allowed. In *Wilshire Mortgage Corp.* v. *O. A. Graybeal Co.,* 41 Cal.App.2d 1 [105 P.2d 996], a dismissal entered by stipulation of the parties was deemed to be neither a confession nor an adjudication that the injunction was wrongfully issued, and the court properly denied recovery. In none of those cases was judgment on the merits considered.

United Pacific cites and relies upon the case of *Curtiss* v. *Bachman,* 110 Cal. 433 [42 P. 910, 52 Am.St.Rep. 111]. There the court held that a successful motion to dissolve an injunction obtained ex parte, or a successful appeal from an order granting an injunction, after notice and hearing, gives rise to liability on the bond for damages, but if the defendant, instead of attempting to rid himself of the restriction, seeks to prevent the issuance of a permanent injunction or elects to defend the action on the merits, the expense of counsel fees thus incurred is an incident of suit and not recoverable as damages sustained by reason of the injunction. (See also *Bustamente* v. *Stewart,* 55 Cal. 115; *Lambert* v. *Haskell,* 80 Cal. 611 [22 P. 327].)

However, in the later case of *Reachi* v. *National Auto. & Cas. Ins. Co.,* 37 Cal.2d 808 [236 P.2d 151], the California Supreme Court recognized and restated the general rule that expenses incurred in the defense of a prior attachment suit are not recoverable in a subsequent action on the bond if the attachment might have been vacated on proper motion without incurring such expenses, but held that such expenses

are recoverable items of damages in an action on the bond where the attachment is not subject to a motion to vacate or dissolve it, being valid and regular on its face, and it is necessary to defend the main action in order to defeat the attachment. United Pacific's arguments that the *Reachi* rule, laid down in an action on an attachment undertaking, is inapplicable to this case arising on an injunction bond, are without merit. With respect to allowances for damages incurred by reason of a wrongful levy of attachment or wrongful issuance of an injunction, the courts of this state have applied the same principles. Cases arising on injunction bonds and cases arising on attachment bonds are cited without any distinction being made (*Reachi* v. *National Auto. & Cas. Ins. Co., supra*; *LeFave* v. *Dimond,* 46 Cal.2d 868, 871 [299 P.2d 858, 60 A.L.R.2d 939] (dicta); *Ideal Heating Corp.* v. *Royal Indem. Co.,* 107 Cal.App.2d 662 [237 P.2d 521]). Neither logic nor public policy would be served by a determination that recovery will be permitted a plaintiff in an action on an attachment undertaking and denied a plaintiff in an action on an injunction bond where, in each case, it was necessary to defend on the merits in order to rid the plaintiff of the wrongful attachment or preliminary injunction.

We paraphrase the *Reachi* rule: Where it is necessary to defend on the merits in order to defeat a preliminary injunction, judgment after full trial against the party who obtained the preliminary injunction is, in effect, tantamount to an adjudication that he was not entitled to any injunctive relief at any time, and that thereupon a right of action upon the injunction bond accrues in favor of the party enjoined. (See also *Robinson* v. *Fidelity & Deposit Co.,* 5 Cal.App.2d 241 [42 P.2d 653]; *Rice* v. *Cook,* 92 Cal. 144, 147 [28 P. 219]; 27 Cal.Jur.2d, Injunctions, § 108, p. 233.) As to the accrual of liability and right of action on the bond, there is no distinction ". . . whether the single relief of injunction is sought and a temporary injunction secured pending the disposition of the case, or whether the temporary injunction is merely ancillary to a different remedy." (28 Am.Jur., Injunctions, § 388, p. 853.)

In our case the order for issuance of the preliminary injunction was granted after a full and contested hearing; the injunction was valid and regular on its face; and an appeal from the order obviously would have been futile. There was no method provided by law whereby plaintiffs could have been relieved of the restraint save by trial on

the merits. It is clear that this case falls squarely within the rule of *Reachi*. We conclude that judgment after trial on the merits in the injunction suit constituted a "final decision" that the Holman group was not entitled to the preliminary injunction.

United Pacific next contends that the direct damages, i.e., damages for the value of ore mined by Holman during the life of the preliminary injunction and subsequently sold by him, may not be recovered in an action against it on the bond for the reason that such damages were not proximately caused by reason of the injunction. In support of its contention, United Pacific argues that a showing that damages occurred during the period of the bond is not sufficient to cause liability to attach; the proof must disclose that such damages occurred by reason of the injunction and bond. It is argued that since Holman was already in possession the issuance of the injunction did not place him in a position to extract ore from the land; that it did not oust plaintiffs from possession nor prevent them from utilizing property in their possession and hence the damages would have been the same had no injunction been issued. It is also argued that the damages occurred by reason of tortious acts of Holman after termination of the preliminary injunction by the prior judgment and those acts cannot be attributed to the bond so as to cause liability to attach to the surety.

The general rule is stated in 27 Cal.Jur.2d, Injunctions, section 108, page 233, as follows:

"The liability of sureties on an injunction bond depends simply on proof that the injunction was issued, that the defendant suffered damage thereby, and that the court has decided that the plaintiff was not entitled to the injunction." (*Rice* v. *Cook*, 92 Cal. 144 [28 P. 219] ; *Asevado* v. *Orr, supra*, 100 Cal. 293; *Edwards* v. *Container Kraft Carton etc. Co.*, 161 Cal.App.2d 752, 761 [327 P.2d 622].)

The cause of action against the sureties is predicated on breach of contract and no element of wrongful act or bad motive is necessary (1 Witkin, Cal. Procedure, § 44, p. 886) ; nor will the fact that the damage occurred by reason of the tortious act of the principal relieve the surety from liability (*Moore* v. *Maryland Casualty Co.*, 100 Cal.App. 658, 662 [280 P. 1008]).

The measure of damages in a case of this kind is set out in 2 High on Injunctions, 4th edition, section 1663, thusly:

"In determining the amount of damages to be allowed upon

the dissolution of an injunction restraining one from exercising acts of ownership over his real property, the courts are not governed by arbitrary rules, but proceed upon equitable principles, the defendant being entitled to such damages as are the necessary and proximate result of such deprivation." (See *Robinson* v. *Fidelity & Deposit Co.,* 5 Cal. App.2d 241, 245 [42 P.2d 653] ; *Moore* v. *Maryland Casualty Co., supra,* 100 Cal.App. 658, 663-664; *Rice* v. *Cook, supra,* 92 Cal. 144, 149; *Draffen* v. *United States F. & G. Co.,* 217 Cal. 43, 46 [17 P.2d 121].)

█ A plaintiff in a suit against the surety on an injunction bond is not limited to damages accruing during the time the injunction was operative but is entitled to damages flowing directly from the wrongful injunction for a period of time beyond the date of its dissolution (43 C.J.S., Injuctions, § 309, p. 1091).

█ The Butler estate was the owner of the real property and all minerals therein and thereunder. As an incident of that ownership it had the legal right to work the mine, to mill the ore, to sell the product and collect and retain the price. It had the legal right to lease the property to Russell-Chambers. The preliminary injunction restrained Butler from exercising any of those rights inherent in its ownership of the land and restrained Russell-Chambers from exercising any rights which they acquired under the lease from Butler. The acts of the Holman group were carried out under the protection of the preliminary injunction and the bond of United Pacific. The fact that the stockpiled ore was sold after dissolution of the preliminary injunction is immaterial. That sale flowed directly from and as an immediate consequence of the prior acts of mining, extracting and stockpiling the ore in the possession of Holman while the injunction operated to render the owner of the ore helpless to take any action in protection of its property. The trial court did not err in awarding judgment against United Pacific for damages for the value of the ore.

United Pacific next contends that the awards of attorneys' fees and surveyor's fees which were allocated to dissolution of the preliminary injunction are erroneous. █ It is now well settled that reasonable counsel fees and expenses incurred in successfully procuring a final decision dissolving the injunction are recoverable as ''damages'' within the meaning of the language of the undertaking, to the extent that those fees are for services that relate to such dissolu-

tion *(Reachi* v. *National Auto & Cas. Ins. Co., supra,* 37 Cal.2d 808) ; *Soule* v. *United States F. & G. Co.,* 82 Cal.App. 572 [255 P. 886]). ■ The fixing of a reasonable fee rests in the discretion of the trial judge and an appellate court will not disturb the ruling unless " 'the sum allowed is so exorbitant that its allowance constitutes a palpable and plain abuse of discretion.' " *(Mountain View Union High School District* v. *Ormonde,* 195 Cal.App.2d 89, 96 [15 Cal.Rptr. 461] ; *State of California* v. *Westover Co.,* 140 Cal.App.2d 447, 450 [295 P.2d 96].) ■ Counsel fees reasonably paid to secure a dissolution of the injunction are chargeable against the bond, even though other matters were heard at the same time *(Mason* v. *United States Fid. & Guar. Co.,* 60 Cal.App.2d 587 [141 P.2d 475]). In such a case it is for the trial court, in its discretion, to make a proper allocation. ■ A trial judge is necessarily familiar with the value of an attorney's services, and when the nature and extent of such services is made known to the court, its own experience qualifies it to fix their value. *(Spencer* v. *Collins,* 156 Cal. 298 [104 P. 320, 20 Ann.Cas. 49].)

■ In our case there were necessarily involved in the single trial two actions, i.e., the action brought by Butler and the cross-action interposed by the Holman group. As has been mentioned, Holman's cross-complaint formed the basis for issuance of the injunction. It seems clear that counsel fees incurred in the prosecution of Butler's action cannot be ascribed to the injunction. It is equally clear that plaintiffs are entitled to recover as damages such counsel fees and necessary expense as are properly allocable to defense of the cross-complaint.

It would serve no useful purpose for this court to enter upon an exercise in mathematics by summarizing the extensive testimony relating to counsel fees. Suffice it to say that counsel for plaintiffs testified as to the nature and extent of their services. Their total fees covering all services in the principal suit, commencing with a time prior to the filing of the Butler complaint and terminating with the final decision on appeal, amounted to $46,156.78. Of this amount the trial court allocated $12,600 to necessary legal services rendered in procuring a dissolution of the preliminary injunction. We cannot say that such allowance constitutes an abuse of discretion.

■ Mr. Ross, a surveyor engaged by Russell-Chambers, testified in detail as to the services which he performed. The reasonableness of his fee of $2,165 is not questioned.

The record discloses that he segregated and billed separately for the value of services performed during the life of the restraining order and those performed during the period the preliminary injunction was operative. United Pacific argues that, by the terms of the Butler to Russell-Chambers lease, the lessees undertook to establish the boundary line at their own expense and the surveyor's fees, being a necessary part of that expense, were incurred by reason of their contractual obligation and not by reason of the injunction. But the Holman group, at whose instance the bond was issued, brought Russell-Chambers into the action as new parties cross-defendant, and Russell-Chambers were thereby required to cause a survey to be made and incur expenses therefor in order to establish the boundary line and thus defend against the cross-complaint. In the exercise of its discretion, the trial court obviously determined that the knowledge gained by the survey was an important factor in defeating the cross-complaint and the injunction with it, and it was immaterial that that knowledge also operated to resolve the same issue involved in the action brought by Butler. We find no abuse of discretion and leave the expense of the survey where the trial court laid it.

### Appeal of Plaintiffs

Plaintiffs contend that the trial court erred in refusing to allow prejudgment interest on the value of ore converted and the awards of counsel fees. Plaintiffs are entitled to interest on the damages allowed as compensation for ore converted from the time of the conversion (Civ. Code, § 3336; *Crofoot Lumber, Inc.* v. *Ford,* 191 Cal.App.2d 238, 248 [12 Cal.Rptr. 639]; *Murphy* v. *Wilson,* 153 Cal.App.2d 132, 136 [314 P.2d 507]; *Katz* v. *Enos,* 68 Cal.App.2d 266, 278 [156 P.2d 461]; *Betzer* v. *Olney,* 14 Cal.App.2d 53, 61 [57 P.2d 1376]; 36 A.L.R.2d 377), at the legal rate of 7 per cent per annum (*Murphy* v. *Wilson, supra*). The Holman group was guilty of successive conversions as the ore was being mined, but the last conversion occurred on November 22, 1955, when they surrendered possession of the mine but refused to deliver up the stockpiled ore or account for and pay over the proceeds of ore theretofore shipped for sale. It was then within the power of the Holman group to prevent the accrual of interest by delivering up possession of the ore to its rightful owner. They chose instead to retain the ore and the proceeds of sales thereof, gambling on a reversal of the judgment in the injunction suit. Having gambled and

lost, the law requires them to pay to plaintiffs interest as compensation for the wrongful detention.

The contention of United Pacific that interest is not allowable because the amount of damages was unliquidated until the judgment herein is without merit. True, the amounts allowed are less than the amounts specified in the prayers of the complaints. It may be that within the knowledge of plaintiffs their claims were unliquidated at the time of commencement of the suits, but the knowledge of the Holman group made the claims certain and exact. Their books showed the amounts of salable concentrates extracted from the ore and shipped to the purchasing agency, the price received therefor and their expense of operation.

Turning to plaintiffs' contention that they are entitled to prejudgment interest on the awards of counsel fees, we have concluded that there was no error in this respect.

The grounds of liability and the measure of damages are different in the cause of action for conversion against the individual defendants and the causes of action on the bonds. The individual defendants, on the one hand, and the bonding companies, on the other, were represented by different attorneys, filed separate pleadings, and occupied different positions. The general rule is that attorneys' fees are not a proper item of recovery from the adverse party, either as costs, damages or otherwise, unless there is express statutory authority or contractual liability therefor (Code Civ. Proc., § 1021; *Reid* v. *Valley Restaurants, Inc.*, 48 Cal.2d 606, 610 [311 P.2d 473]; *Viner* v. *Untrecht*, 26 Cal.2d 261, 272 [158 P.2d 3]). Section 3336 of the Civil Code, which sets out the measure of damages in conversion actions, does not expressly provide for attorneys' fees for the converting of property. It has long been held that such fees are not within the rule of damages provided for by that section (*Viner* v. *Untrecht, supra*; *Hays* v. *Windsor*, 130 Cal. 230, 236 [62 P. 395]; *Hornaday* v. *Hornaday*, 95 Cal.App.2d 384, 394 [213 P.2d 91]). Obviously the Thickstun couple and the James couple have no liability arising from contract to pay attorneys' fees, since they are not sureties on either of the two bonds, nor were they joined as parties defendant in the cause of action relating to either bond. It is elementary that a defendant is not liable on the bond if he is not a party to it (*Asevado* v. *Orr, supra*, 100 Cal. 293), and judgment may be entered only against those sureties who are named as defendants in the complaint (*Browner* v. *Davis,*

15 Cal. 9; 27 Cal.Jur.2d, Injunctions, § 112, p. 237). As to these defendants the awards of counsel fees allowed in a conversion action were erroneous. It follows that plaintiffs are not entitled to prejudgment interest thereon.

J. R. Holman executed the bond issued by Travelers, thereby making himself a surety thereon, and he was joined as a party defendant in the cause of action against that bond. His liability as to attorneys' fees is limited to the amounts allocated thereto under the trial court's apportionment, and plaintiffs' right to recover interest from Holman must be measured by his liability.

In seeking interest on the amounts of counsel fees allocated to the respective bonds, plaintiffs cite and rely upon the case of *Panter* v. *National Surety Co.*, 36 Cal.App. 44, 47 [171 P. 803], in which a judgment providing for interest on the allowances for counsel fees and expenses incidental and necessary to the plaintiff's successful endeavor to secure the dissolution of an injunction was held to be proper. However, in that case the court pointed out that no contention was made that the amounts found to have been expended by the plaintiff were uncertain or incapable of being made certain by calculation, and the interest was therefore allowed under the authority of section 3287 of the Civil Code. In our case, such contention is convincingly made by defendant United Pacific. It was only through judicial determination that a specific sum was deemed to be the value of services performed by plaintiff's counsel for which the sureties were liable. It was first necessary for the probate court to fix and approve the amount to be allowed for extraordinary services rendered in behalf of the Butler estate in the injunction suit. In turn, the court below had the task of determining in this action the reasonable value of services actually rendered in procuring dissolution of the two injunctions and apportioning the amount. It was only through that final legal adjudication that the amount for which the sureties on each of the bonds were liable was made certain. We are of the opinion that the court properly decided that plaintiffs are not entitled to interest on the allowance for attorneys' fees which it ultimately found to be due from the sureties for any period of time preceding the judgment.

The unperfected appeals of J. R. Holman, Andrew J. Thickstun, Alta Mae Thickstun and the Travelers Indemnity Company are dismissed.

The judgment is modified to provide that plaintiffs shall receive interest at the rate of 7 per cent per annum from

November 22, 1955, on the sums allowed against the respective defendants as damages for ore converted. As so modified, the judgment is affirmed.

Stone, Acting P. J., concurred.

Conley, P. J., deeming himself disqualified, did not participate.

A petition for a rehearing was denied April 11, 1963. Conley, P. J., deeming himself disqualified, did not participate. The petition of appellant United Pacific Insurance Company for a hearing by the Supreme Court was denied May 8, 1963.